UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ENERGY TRANSFER GC NGLs LLC** | * |
| **(formerly, LONE STAR NGL LLC** | * |
| **(ENERGY TRANSFER)); SEA ROBIN** | * |
| **PIPELINE COMPANY, LLC,** | * |
| | * |
| **VERSUS** | *    CIVIL ACTION NO. _____ |
| | * |
| **ENTERPRISE GAS PROCESSING, LLC;** | * |
| **ENTERPRISE PRODUCTS OPERATING,** | * |
| **LLC; ENTERPRISE FIELD SERVICES,** | * |
| **LLC; ENTERPRISE FIELD SERVICES** | * |
| **(OFFSHORE), LLC.** | * |

---

## NOTICE OF REMOVAL

Defendants, Enterprise Gas Processing, LLC, Enterprise Products Operating, LLC, Enterprise Field Services, LLC, and Enterprise Field Services (Offshore), LLC, ("Defendants") with a full reservation of rights, defenses, objections, and exceptions, hereby remove to this Court, pursuant to 28 U.S.C §§ 1331, 1441 and 1446, the above-captioned civil action bearing Docket Number 114768, in the 15th Judicial District Court for the Parish of Vermilion (Division G), State of Louisiana.

**I.      State Court Action**

On November 4, 2024, Plaintiffs Energy Transfer GC NGLs LLC (f/k/a Lone Star NGL LLC) and Sea Robin Pipeline Company, LLC ("Plaintiffs") filed their Verified Petition for Damages and Injunctive Relief and Request for Temporary Restraining Order and Preliminary Injunction (the "Petition"), numbered and styled as Docket Number 114768, *Energy Transfer GC NGLs LLC et al. v. Enterprise Gas Processing, LLC et al.*, in the 15th Judicial District for the Parish of Vermilion, Louisiana.

**II.      Enterprise's Notice of Removal Is Timely**

Defendants received a copy of Plaintiffs' Petition on November 4, 2024.  Accordingly, Defendants are filing their Notice of Removal within the 30-day time period as required by 28 U.S.C. § 1446(b).

**III.    All Defendants Consent to Removal**

Defendants Enterprise Gas Processing, LLC, Enterprise Operating Products, LLC, Enterprise Field Services, LLC, and Enterprise Field Services (Offshore), LLC all consent to the removal of this action.

**IV.    Venue**

Venue is proper in the United States District Court for the Western District of Louisiana, Lafayette Division under 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed action was pending.  However, pursuant to the Restated and Amended Agreement for the Construction and Operation of the Sea Robin Gas Processing Plant dated October 1, 1995 ("Operating Agreement") to which Defendants and Plaintiff Energy Transfer GC NGLs LLC are parties, Defendants reserve their right to seek arbitration of the claims asserted against them in this suit.

**V.    Basis for Removal**

A civil action is removable based on the existence of a federal question if the action "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

Federal jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiffs' claims are based on federal law and the Court will need to interpret and apply federal law in deciding Plaintiffs' claims.  In ¶ 48 of its Petition, Plaintiffs allege that:

> Sea Robin has a federally imposed duty under the National Gas Act, 15 U.S.C. §§ 717 *et seq*., to provide open and nondiscriminatory access to Plaintiff's pipelines.  Defendants' breach of contract and attempt to shut down the Plant threaten to force Plaintiff to violate its duty because it will no longer be able to provide pipeline access to its customers.

Enterprise disputes this allegation and that it entitles Plaintiffs to the injunctive relief they are seeking.

This case arises out of a single event (*i.e.*, the closure of the Sea Robin Gas Processing Plant in Erath, Louisiana).[1]  Therefore, under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over all state law claims because those claims arise out the same case or controversy as Plaintiffs' federal claims.

Because Plaintiffs' claims arise under federal law, removal of this action is proper under 28 U.S.C. §§ 1331 and 1441.

---

[1] Although it is called the "Sea Robin Plant," Plaintiff Sea Robin Pipeline Company, LLC does not own any interest in the plant.

**VI.     Compliance with 28 U.S.C. § 1446**

Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the clerk of the 15th Judicial District for the Parish of Vermilion, Louisiana.  A true and correct copy of Plaintiffs' Petition is attached hereto as Exhibit A.

## CONCLUSION

WHEREFORE, Defendants request that this action be removed from the 15th Judicial District for the Parish of Vermilion, Louisiana to the United States District Court for the Western District of Louisiana, Lafayette Division, and that this Court enter such further orders as may be necessary and appropriate.

Respectfully submitted:

KNEZEK LAW

*/s/ Elena A. Knezek*

By:     _____
ELENA A. KNEZEK (#26787)
L. BIANCA CHRETIEN (#29123)
JESSICA N. CLEMENT (#29127)
GRANT F. FREEMAN (#35131)
95 Woods Crossing, Ste. 100
Lafayette, LA  70508
Telephone: (337) 266-2233
Facsimile: (337) 534-0945
eknezek@knezeklaw.com
bchretien@knezeklaw.com
jclement@knezeklaw.com
gfreeman@knezeklaw.com
ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this date been forwarded to all known counsel of record via email or by depositing a copy of same in the United States Mail, postage prepaid and properly addressed.

Lafayette, Louisiana, this 5th day of November 2024.

*/s/ Elena A. Knezek*

_____
ELENA A. KNEZEK

Vermilion Parish
Filed Nov 04, 2024 2:14 PM
Regina Trahan
Deputy Clerk of Court

C-114768
G2

**15th JUDICIAL DISTRICT COURT FOR THE PARISH OF VERMILLION**

**STATE OF LOUISIANA**

DOCKET NO.                                              DIVISION: " "

**ENERGY TRANSFER GC NGLS LLC (FORMERLY, LONE STAR NGL LLC
(ENERGY TRANSFER)); SEA ROBIN PIPELINE COMPANY, LLC**

**VERSUS**

**ENTERPRISE GAS PROCESSING, LLC;
ENTERPRISE PRODUCTS OPERATING LLC;
ENTERPRISE FIELD SERVICES, LLC;
ENTERPRISE FIELD SERVICES (OFFSHORE) LLC**

FILED:_____          _____
                                                          **DEPUTY CLERK**

**VERIFIED PETITION FOR DAMAGES AND INJUNCTIVE RELIEF AND REQUEST
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs Energy Transfer GC NGLs LLC (formerly, Lone Star NGL LLC (Energy
Transfer)) ("Energy Transfer") and Sea Robin Pipeline Company, LLC ("Sea Robin"), assert the
following against Defendants Enterprise Gas Processing, LLC ("Enterprise"); Enterprise Products
Operating LLC ("Enterprise Products"); Enterprise Field Services, LLC ("Enterprise Field
Services"); and Enterprise Field Services (Offshore) LLC ("Enterprise Offshore") (collectively,
the "Defendants"):

**INTRODUCTION**

1.

The Sea Robin Gas Processing Plant (the "Plant") is a natural gas processing plant located
in Erath, Louisiana.    The ownership and operation of the Plant is governed by multiple
agreements, including a Restated and Amended Agreement for the Construction and Operation of
the Sea Robin Gas Processing Plant (the "COA") and its amendments (collectively with the COA,
the "COAA").    The operation of the Plant is further governed by a Restated and Amended
Agreement between Sea Robin, as pipeline operator, and the Plant owners, including Enterprise
(the "SA").

2.

Both the COAA and SA impose certain duties and obligations on Enterprise as Plant owner
and operator.    The SA specifically requires that Enterprise "exercise due diligence" to minimize
the "frequency of material changes in the volume of gas to be processed."    It further requires

**EXHIBIT A**

Enterprise to endeavor to keep gas flowing as constant as practicable and use "best efforts" to dehydrate by-passed gas.

3.

One of the express provisions of the COAA is the establishment of binding rules that govern voting procedures for all matters concerning the operations of the Plant.   The relevant voting provisions mandate that any matter requiring approval of the Plant owners requires the affirmative **majority vote of four of the seven** owners of the Plant.   COAA's "four vote" requirement expressly applies to any proposal to temporarily shut down the Plant.

4.

Despite the COAA's express terms and purpose, Enterprise has unilaterally effectuated a shutdown of the Plant without complying with the plain terms and purpose of the COAA voting procedures.   Indeed, Enterprise alone desires a Plant shutdown.   This proposal was previously rejected by the other Plant owners and, accordingly, Enterprise could not acquire the requisite **majority vote of four Plant owners** to accomplish its goal of shutting down the Plant.

5.

But that did not stop Enterprise from forcing its will upon the other Plant owners.   In a flagrant effort to circumvent the COAA's express voting requirements, Enterprise, in conjunction with the other Defendants, orchestrated a sham transaction where it unlawfully inflated Enterprise's voting power and usurped the decision-making rights of the other Plant owners.

6.

Having accomplished its nefarious goal, Enterprise unlawfully shutdown the Plant and repeatedly refused to negotiate with Plaintiffs who, on multiple occasions, attempted to resolve this matter without court intervention.   Having exhausted all available non-judicial remedies, Plaintiffs now turn to this Court for intervention and injunctive relief to preserve the status quo and prevent further unlawful conduct by Defendants.

7.

Enterprise's ruse has eviscerated the terms and purpose of the COAA and SA, violated the implied duty of good faith that governs all contracts under Louisiana law, and unlawfully imposed its dictatorial authority upon Plaintiffs.

8.

As a result of Defendants' unlawful conduct, Plaintiffs have already suffered and will continue to suffer irreparable harm.   The Defendants' unlawful acts have deprived Energy Transfer of its voting rights under the COAA and will continue to deny Energy Transfer the right to fully and fairly vote its ownership interests in the Plant under the same.   The continued cessation of Plant operations will furthermore cause irreparable harm to Plaintiffs' reputation, competitive position, goodwill, and further expose Plaintiffs to future litigation and liability.

9.

## I.   PARTIES

Energy Transfer GC NGLs LLC is a Delaware limited liability company with its principal place of business in Dallas, Texas.

10.

Sea Robin Pipeline Company, LLC is a Delaware limited liability company with its principal place of business in Dallas, Texas.

11.

Enterprise Gas Processing, LLC is a Delaware limited liability company with its principal place of business in Houston, Texas.

12.

Enterprise Products Operating LLC is a Texas limited liability company with its principal place of business in Houston, Texas.

13.

Enterprise Field Services, LLC is a Texas limited liability company with its principal place of business in Houston, Texas.

14.

Enterprise Field Services (Offshore) LLC is a Texas limited liability company with its principal place of business in Houston, Texas.

## II.   JURISDICTION AND VENUE

This Honorable Court has jurisdiction over this matter and the Defendants, and venue is proper in the Parish of Vermilion pursuant to Louisiana Code of Civil Procedure Article 74.

15.

This Court possesses personal jurisdiction over Defendants because they have "purposefully directed [their] activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *ACG Mediaworks, L.L.C. v. Ford*, 03-978, p. 10 (La. App. 5 Cir. 3/30/04), 870 So. 2d 1097, 1104. Specifically, the Plant at issue in this action is located in Vermillion Parish.

16.

The COAA, one of the operative agreements at issue in this litigation, contains an arbitration clause (the "Clause"). However, the Clause is no bar to this application for a temporary restraining order and injunctive relief. To the contrary, it expressly empowers this court to provide preliminary relief in aid of arbitration.

17.

Indeed, the Clause provides that "[e]ach Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for **preliminary relief in aid of arbitration**." **Ex. A** at 1 (emphasis added). A straightforward reading of this provision demonstrates the parties' understanding that protective measures may be necessary to ensure meaningful arbitration. It expressly allows a preliminary court remedy, provided that it is "in aid of arbitration."

18.

Both Louisiana and federal courts recognize that courts act "in aid of arbitration" by preserving the status quo when failure to do so would irreparably harm a party to the Agreement. *Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C.*, 2007-1379, p. 7 (La. App. 4 Cir. 3/12/08); 980 So. 2d 780, 784 (finding that courts may issue temporary injunctive relief "pending arbitration so that the parties can engage in meaningful arbitration; without it one party can irreparably injure the interests of the other and turn the arbitration into a hollow formality") (quotation omitted).

19.

Moreover, Louisiana courts consistently look to the federal courts' interpretation of the Federal Arbitration Act (FAA) for guidance, and the FAA confirms that courts can and should act to preserve the status quo before arbitration. *See Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 18 (La. 6/29/05), 908 So. 2d 1, 24–25; *Limousine Livery*, 2007-1379, at p. 6; 980 So. 2d at 784.

Those courts have consistently noted that "[t]he prevailing federal court view is that there is 'some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by arbitration.'" *Limousine Livery*, 2007-1379, at p. 6; 980 So. 2d at 784.

20.

Finally, to the extent that the Court finds that the Clause and Louisiana law are silent on this question, the Commercial Arbitration Rules of the American Arbitration Association ("AAA Guidelines") suggest that pre-arbitration judicial relief is proper.    The Clause provides that the AAA Guidelines apply whenever Louisiana law and the Agreement's text run out.    **Ex. A** at 2. AAA Rule 37(c) makes clear that a party may seek "interim measures" from a "judicial authority" without falling afoul of its "agreement to arbitrate."    See AAA Rule 37(c).    Thus, the Rules necessarily assume that courts can provide interim relief before arbitration begins.

21.

### III.  FACTUAL BACKGROUND

The Sea Robin Pipeline, operated by Sea Robin, is a submarine natural gas pipeline system that brings large quantities of natural gas from the offshore oil wells in the Ship Shoal area of the central Gulf of Mexico onto the central Louisiana coast.    The Sea Robin Gas Processing Plant (the "Plant") is a natural gas processing plant located in Erath, Louisiana.    The Plant actively provides critical gas processing services that facilitate the distribution of gas to the broader downstream marketplaces and the American economy.

22.

The ownership of the Plant is governed by multiple valid and enforceable contracts and their amendments.    On January 24, 1972, the agreements' original parties executed the Construction and Operation Agreement (the "1972 COA") concerning the Plant.    The 1972 COA was updated on October 1, 1995, under the COA, attached hereto as **"Exhibit B"** and incorporated herein.    On January 1, 2002, the COA was amended (the "Amendment"), attached hereto as **"Exhibit C"** and incorporated herein.[1]    On January 1, 1992, the SA was executed, attached hereto as **"Exhibit D"** and incorporated herein.

---

[1] As previously noted, the COA and its Amendments are collectively referred to herein as the "COAA."

23.

Under the SA, the terms of the agreement impose express duties on the Plant Owners, including Enterprise. The SA requires that Plant Owners "give Sea Robin as much advance notice as possible of any material changes in the volume of gas to be processed and to **exercise due diligence to minimize the magnitude and frequency of such change to the end that the gas flow shall be as constant as possible**." **Ex. D** at 2.2 (emphasis added). The SA further mandates that Plant Owners "use their best efforts to dehydrate By-passed Gas." **Ex. D** at 3.3. "By-passed Gas" means "gas delivered to the Plant Delivery Point which is returned without processing or loss to Sea Robin, as the Plant Redelivery Point." **Ex. D** at 1.17.

24.

Notably, the SA contemplates protections for Sea Robin and its customers in the event of the SA's termination or the shutdown of the Plant. The SA, specifically, requires that Plant Owners provide 12 months advanced notice prior to the termination of the SA. The purpose of the advanced notice requirement is to give Sea Robin and its customers sufficient time to find other arrangements for the transportation and processing of gas. Without the advanced notice provision, Sea Robin and its customers would find themselves in possession of gas without a means of transporting or processing it due to the limited availability of other gas infrastructure in the area. At the current juncture, no notice of termination has been provided to Sea Robin under the SA.

25.

Under the COAA, Enterprise is both Plant Owner and Plant Operator. The COAA specifically imposes multiple duties on Enterprise in its role as Plant Operator. For example, it mandates that Enterprise supervise the Plant and all its operations in a "good and workmanlike manner" and "act in accordance with its best judgment of what a prudent operator would do in same or similar circumstances." **Ex. B** at 11.2. It further imposes on Enterprise a duty to "consult freely with Plant Owners . . ." and "[s]upervise all other matters necessary to the full accomplishment of the purposes of [the COAA]." **Ex. B** at 11.2, 11.3.13.

26.

In addition to the express duties imposed on Enterprise, the COAA and SA impose an implied duty of good faith. The COAA expressly states that the COAA "shall be governed by

and construed in accordance with the laws of the State of Louisiana." **Ex. B** at 17.1.    The SA

states the "agreement shall be subject to all valid applicable state, federal, and local laws . . ."  **Ex.**

**D** at 11.1.    In Louisiana, "[c]ontracts must be performed in good faith."    La. Civ. Code art. 1983.

Accordingly, Enterprise, along with the other Defendants, were bound to act in good faith in

furtherance of their performance under the respective agreements.

27.

The COAA also imposes enforceable obligations upon the Plant Owners.    Each "Plant

Owner" agreed to "process[] . . . its share of Committed Gas" at the Plant.    **Ex. B** at 6.1.    The

"Plant Owner(s)" are defined as "the parties who own the Sea Robin Gas Processing Plant, whether

presently or in the future."    **Ex. B** at 1.1.17.    The original Plant Owners consisted of the

following entities:

| | OWNER | GAS UNITS | LIQUID UNITS | PLANT OWNERSHIP |
|---|---|---|---|---|
| 1 | Amerada Hess Corporation | 2,463 | 2,664 | 24.41430% |
| 2 | BP - Amoco Oil | 501 | 382 | 4.20476% |
| 3 | Burlington Resources | 23 | 19 | 0.20000% |
| 4 | UNOCAL | 35 | 66 | 0.48095% |
| 5 | Devon Energy Corporation | 1,643 | 2,133 | 17.98095% |
| 6 | Dynegy Midstream Services, LP | 77 | 100 | 0.84288% |
| 7 | El Paso Production Company | 677 | 590 | 6.03333% |
| 8 | Energy Resource Technology, Inc. | 28 | 23 | 0.24286% |
| 9 | Enterprise | 2071 | 1190 | 15.52857% |
| 10 | Exxon Company, U.S.A. | 1,099 | 1,115 | 10.56286% |
| 11 | Newfield Exploration Co. | 23 | 27 | 0.23810% |
| 12 | Pogo Producing Co. | 1,860 | 2,191 | 19.29048% |
| | TOTAL: | 10,500 | 10,500 | 100.00000% |

**Ex. B** at Ex. C.

28.

Pursuant to the terms of the COAA, the Plant Owners' ownership interests in the Plant are

assignable.    *See* **Ex. B** at 4.4.    However, such sales and assignments are not without limit;

assignments are subject to multiple restrictions and governed by the express terms of the COAA.

*See id.*    For example, a party acquiring ownership interests in the Plant "**must** . . . commit Gas

for processing in the Plant."    **Ex. B** at 4.4(c) (emphasis added).    The term "Gas" means "all

gaseous hydrocarbons and concomitant material whether produced form oil or gas wells, and if

delivered to the Plant for processing, shall include separator gas from the Condensate Removal

Facilities." **Ex. B** at 1.4.

### 29.

Prior to October 2024, **seven** entities comprised the Plant Owners.   Enterprise is both a Plant Operator and a Plant Owner.   Two of the Plant Owners—Enterprise Products Operating LLC ("Enterprise Products") and Enterprise Field Services, LLC ("Enterprise Field")—are owned and operated by Enterprise (collectively with "Enterprise", the "Enterprise Plant Owners"). Before October 2024, the **three** Enterprise Plant Owners owned a 70.95 percent ownership interest in the Plant.

### 30.

The remaining four Plant Owners—Talos ERT LLC ("Talos"), Energy Transfer GC NGLs LLC (formerly Lone Star NGL LLC (Energy Transfer)) ("Energy Transfer"), Targa Resources, Inc ("Targa"), and W & T Offshore, Inc. ("W & T") (collectively, the "Independent Plant Owners")—are separate and distinct entities from Enterprise and one another. Before October 2024, the Independent Plant Owners collectively owned the remaining 29.05 percent ownership interest in the Plant.

### 31.

The COAA relies on the composition of the Plant Owners for the important purpose of balancing power amongst them and ensures good faith in dealing with one another.   The COAA's provisions governing voting procedures clearly reflect this reality.   The relevant voting provisions mandate that any matter requiring approval of the Plant Owners requires the affirmative **majority vote of four** of the seven Plant Owners:

> 12.3   <u>Vote Required</u>.   Except as otherwise stated herein, action on any matter requiring the approval of Plant Owners shall require the affirmative vote of at least four Owners having among them a minimum of sixty-five percent (65%) of the voting interest of all Owners; provided that, a single Owner having a voting interest greater than thirty-five percent (35%) shall not prevent affirmative action on any matter.   The voting interest of any Owner failing within the time allowed or declining to vote on any matter shall be counted against such proposal.   Each Owner, whether approving or rejecting any proposal, shall nevertheless be bound by the approval or rejection given such proposal.

**Ex. B** at 12.3.

### 32.

The plain purpose of the COAA's "four votes" requirement is to preclude Enterprise, as

majority interest owner, from lording its ownership interests over the Independent Plant Owners. The COAA also prevents Enterprise, as Plant Operator and Plant Owner (and owner of two other Plant Owners), from using the Enterprise Plant Owners as conduits in making unilateral decisions that conflict with the will of the majority Independent Plant Owners.    In short, the COAA's "four vote" procedure protects the Independent Plant Owners from the unfettered and unchecked authority of Enterprise.

33.

Nonetheless, through its unlawful conduct, Enterprise has now gutted COAA's voting procedures and its balance of power.    The COAA permits the Plant Owners to agree "to shut down the Plant for temporary periods."    **Ex. B** at 6.8 ("Temporary Plant Shutdown").    But, critically, a Temporary Plant Shutdown requires a vote amongst the Plant Owners and must be approved by "the affirmative vote of at least **four** Owners."    **Ex. B** at 12.3 (emphasis added). That is, the COAA requires majority vote approval.

34.

By reason and belief, Enterprise desired to execute a Temporary Plant Shutdown prior to October 2024.    But Enterprise lacked the requisite votes to accomplish the shutdown.    In fact, the Independent Plant Owners—Energy Transfer, Talos, Targa, and W&T—all opposed, and continue to oppose, such a shutdown.

35.

Despite the Independent Plant Owners' opposition to the Plant shutdown, Enterprise consciously ignored their objections and unilaterally formulated an unlawful scheme to orchestrate a sham transaction meant to circumvent the COAA's "four vote" requirement.    On October 1, 2024, Enterprise issued a notice informing Energy Transfer and the other Independent Plant Owners that Enterprise had fractionated the ownership interests of the Enterprise Plant Owners and assigned the split ownership shares to one of its affiliates, Enterprise Field Services (Offshore) LLC ("Enterprise Offshore"), a party that was never previously a Plant Owner under the COAA:

| | OWNER | GAS UNITS | LIQUID UNITS | PLANT OWNERSHIP PERCENTAGE |
|---|---|---|---|---|
| 1 | TALOS ERT LLC | 35.76 | 35.76 | 0.34062% |
| 2 | ENTERPRISE GAS PROCESSING, LLC | 5,882.19 | 5,882.19 | 56.02083% |
| 3 | ENTERPRISE PRODUCTS OPERATING LLC | 14.73 | 14.73 | 0.14025% |
| 4 | ENTERPRISE FIELD SERVICES, LLC | 777.59 | 777.59 | 7.40562% |
| 5 | ENTERPRISE FIELD SERVICES (OFFSHORE) LLC | 776 | 776 | 7.39048% |
| 6 | LONE STAR NGL LLC (Energy Transfer) | 2,875.88 | 2,875.88 | 27.38929% |
| 7 | TARGA RESOURCES, INC. | 124.12 | 124.12 | 1.18213% |
| 8 | W & T OFFSHORE, INC. | 14.73 | 14.73 | 0.14025% |
| | TOTAL | 10,500 | 10,500 | 100.00000% |

**Ex. E** at 4.   By reason and belief, Enterprise Offshore has not committed any Gas to the Plant in violation of Section 4.4(c) of the COAA.

36.

Having breached the COAA and artificially inflated its voting power, Enterprise made its move.   The same day it gifted itself a fourth vote, Enterprise issued a Poll Letter requesting each Plant Owner to agree to the desired Temporary Plant Shutdown:

> This Poll Letter is being sent to your attention requesting that each Plant Owner agree to shut down the Sea Robin Gas Processing Plant from November 1, 2024 through April 30, 2025, pursuant to the provisions of Section 6.8 of the C&O Agreement.
>
> Enterprise Gas Processing, LLC, as Plant Operator, recommends approval of this Poll Letter and requests that you return the enclosed ballot sheet via email to eacarter@eprod.com no later than 12:00 noon on October 18, 2024. You will be notified whether the poll proposal is approved. Please contact Emily Carter-Brown at (713) 381-4278 if you have any questions.

**Ex. F** at 1.   The Poll Letter was pure pretense.   Armed with a fourth vote through the sham addition of Enterprise Offshore, Enterprise had the votes to ram the Plant shutdown through regardless of the Independent Plant Owners' will and in defiance of the COAA's terms and procedures.

37.

Enterprise's backdoor takeover flouts the COAA and violates the duties it imposes on Enterprise as a Plant Operator.   It has dismembered the voting procedure agreed to by the parties to the COAA, effectively rendering it nonexistent and carving a path to iron-fisted and dictatorial governance over the Plant.   The nefarious actions of Enterprise have moreover violated the terms of the SA, wherein Enterprise agreed to "exercise due diligence" in minimizing the magnitude and frequency of interruptions to gas flow to the Plant and to use "best efforts" to dehydrate By-passed Gas.

38.

Enterprise further breached the COAA by transferring ownership interests in the Plant to Enterprise Offshore, who, by reason and belief, has not committed any Gas for processing at the Plant in violation of Section 4.4(c) of the COAA.   Accordingly, the vote on the Temporary Plant Shutdown violated the voting procedure established under Article XII of the COAA because it included Enterprise Offshore who had not satisfied the prerequisites necessary to participate in the vote.   Accordingly, the vote on the Temporary Plant Shutdown is void and of no effect because of Enterprise Offshore's unlawful participation.

39.

Since October 1, 2024, Plaintiffs have made repeated good-faith attempts to negotiate with Defendants since their unlawful scheme to unilaterally shut down the Plant.   But Defendants have evaded its good-faith proposals.

40.

Defendants have similarly snubbed Plaintiffs' customers' attempts to negotiate in good faith.   After Plaintiffs met with their customers and transparently explained the impairment of existing contracts that will inevitably occur due to the planned cessation of operations, the customers attempted to contact Defendants to understand their unlawful decision to shut down the Plant.   But instead of offering any explanation for their decision, Defendants coldly rebuffed their inquiries.

41.

Plaintiffs are therefore left with no choice but to turn to this court for intervention and injunctive relief.   On November 1, 2024, having completed its unlawful scheme and coup of Plant governance, Defendants shut down the Plant in violation of the COAA and SA.   Plaintiffs, accordingly, face irreparable harm on multiple grounds if the court permits the Temporary Plant Shutdown to persist.

42.

*First*, Energy Transfer has been completely deprived of exercising its voting rights and been denied the right to fully and fairly exercise its voting interests in management of the Plant. The unlawful loss and deprivation of voting power constitutes irreparable injury that cannot easily be quantified.   *See Pell v. Kill*, 135 A.3d 764, 793 (Del. Ch. 2016) ("**Th[e] loss of voting power**

**constitutes irreparable injury**.'").

43.

*Second*, Energy Transfer has numerous ongoing commercial relationships with producers in the region that utilize the Sea Robin Pipeline and the Plant. The shutdown of the Plant, and resulting interruptions to the Sea Robin Pipeline, will have adverse impacts on Energy Transfer's reputation, competitive position, and goodwill in the marketplace.

44.

*Third*, Sea Robin similarly has transportation commitments to customers that are subject to multiple Transportation Service Agreements ("TSAs"). Indeed, the Sea Robin West Pipeline depends on continuous operations of the Plant to maintain operations on its pipeline and, accordingly, meet its transportation obligations to its customers. The cessation of Plant operations will result in the entire shut-in of the Sea Robin West Pipeline and, accordingly, create potential liability to third parties and difficult-to-calculate losses stemming from Sea Robin's inability to transport their customers' gas.

45.

*Fourth*, any failure of Sea Robin to satisfy its commitments to customers will damage its reputation, competitive position, and goodwill in the marketplace. If Sea Robin cannot meet its obligations to its customers, Sea Robin will lose future business and may be liable for damages.

46.

*Fifth*, the wells that produce gas transported on the Sea Robin Pipeline depend on the operations of the Plant for continued production. The cessation of operations at the Plant will force producers and well operators to shut-in those gas producing wells for the span of the Plant's shutdown. Certain of Sea Robin's customers have warned that shut-in of those wells for any extended period of time may result in the permanent cessation of production for those wells. Accordingly, the cessation of Plant will result in the complete and permanent loss of business and customers by Sea Robin, as well as further damage its reputation and goodwill with customers.

47.

*Sixth*, Sea Robin has a federally imposed duty under the National Gas Act, 15 U.S.C. §§ 717 *et seq*., to provide open and nondiscriminatory access to Plaintiff's pipelines. Defendants' breach of contract and attempt to shut down the Plant threaten to force Plaintiff to violate its duty

because it will no longer be able to provide pipeline access to its customers.

48.

*Seventh*, Plaintiffs have notified their customers of the Plant shutdown.   These customers have already begun to contact Defendants.   However, Defendants refuse to engage with customers or explain what's going to happen to Plant operations.   Defendants' unwillingness to deal with Plant Owners or their customers has impacted, and will continue to impact, Plaintiffs' reputation, competitive position, and goodwill with customers.

49.

Accordingly, Plaintiffs have suffered, and will continue to suffer, immediate and irreparable harm for which there is no adequate remedy at law.

50.

## IV.   CAUSES OF ACTION

### BREACH OF CONTRACT

(Energy Transfer Against All Defendants)

Energy Transfer re-alleges and incorporates by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

51.

Energy Transfer and Defendants entered into an enforceable contract—the COAA.
As an enforceable term of the COAA, Enterprise, as Plant Operator, promised to (1) supervise the operations of the Plant in a "good and workmanlike manner," (2) "act in accordance with its best judgment of what a prudent operator would do in same or similar circumstances," (3) "consult freely with Plant Owners," and (4) "[s]upervise all other matters necessary to the full accomplishment of the purposes of [the COAA]."

52.

Through its own acts and omissions, Enterprise breached, and continues to breach, its express obligations and duties under the COAA by executing the sham transaction meant to circumvent the plain terms and purposes of the COAA.   Through its illegitimate inflation of voting power, Enterprise has completely deprived Energy Transfer of exercising its voting rights and denied Energy Transfer the right to fully and fairly exercise its voting interests in management

of the Plant.   Through its unlawful acts and omissions, Enterprise has effectuated an otherwise unauthorized and unlawful shutdown of the Plant in violation of the COAA.

53.

By reason and belief, Enterprise and Enterprise Offshore have further breached the agreement by effectuating a sham transaction wherein Enterprise Offshore failed to commit any Gas to the Plant, but instead only received ownership interests in the Plant for the sole and unlawful purpose of inflating Enterprise's voting power.   Enterprise further breached the COAA by calling and executing a vote that included Enterprise Offshore when it knew that Enterprise Offshore had not committed Gas to the Plant and, therefore, failed to satisfy the contractual prerequisites for ownership and voting.

54.

Furthermore, the COAA is governed by Louisiana law, which imposes a duty of good faith in performance under the COAA.   See La. Civ. Code art. 1983.   All Defendants have breached their implied duty to perform the COAA in good faith.   By acting with "dishonest" and "morally questionable motives," Defendants' acts and omissions constitute an "intentional and malicious failure to perform" that prevents Energy Transfer from "obtaining the benefit that [Energy Transfer] warrantedly expected to obtain."   Lamar Contractors, Inc. v. Kacco, Inc., 2015-1430, p. 5 (La. 5/3/16), 189 So. 3d 394, 398; Volentine v. Raeford Farms of Louisiana, L.L.C., 48,219, p. 19–20 (La. App. 2 Cir. 7/24/13), 121 So. 3d 742, 753, writ denied, 2013-2493 (La. 1/17/14), 130 So. 3d 948.

55.

As a direct and proximate result of Defendants' material and ongoing breaches, Energy Transfer has been and will continue to be irreparably injured and suffer financial and other damages.

56.

**BREACH OF CONTRACT**
(Sea Robin Against Enterprise)

Sea Robin re-alleges and incorporates by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

57.

Sea Robin and Defendants entered into an enforceable contract—the SA.

58.

As an enforceable term of the SA, Enterprise, as Plant Owner, promised to (1) "exercise due diligence" to minimize the magnitude and frequency of material changes in the volume of gas to be processed at the Plant to the end that the "gas flow shall be as constant as practicable" and (2) use their "best efforts to dehydrate By-passed Gas."

59.

Through its own acts and omissions, Enterprise breached, and continues to breach, its express obligations and duties under the SA by executing the sham transaction meant to accomplish an otherwise unauthorized and unlawful shutdown of the Plant.

60.

Furthermore, the SA imposes a duty of good faith in furtherance of its performance. *See* La. Civ. Code art. 1983. Enterprise has breached its implied duty to perform the SA in good faith. By acting with "dishonest" and "morally questionable motives," Defendants' acts and omissions constitute an "intentional and malicious failure to perform" that prevents Sea Robin from "obtaining the benefit that [Sea Robin] warrantedly expected to obtain." *Lamar*, 2015-1430, at p. 5.

61.

As a direct and proximate result of Defendants' material and ongoing breaches, Sea Robin has been and will continue to be irreparably injured and suffer financial and other damages.

62.

## DECLARATORY JUDGMENT
(Energy Transfer Against All Defendants)

Energy Transfer re-alleges and incorporates by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

63.

"A person interested under a … written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a … contract or franchise, may have determined any question of construction or validity arising under the … contract," and "obtain a declaration of rights, status, or other legal relations thereunder." La. Code Civ. Proc. art. 1872.

Further, "[a] contract may be construed either before or after there has been a breach thereof." La. Code Civ. P. art. 1873.

64.

A plaintiff is entitled to declaratory relief "when his rights are uncertain or disputed in an immediate and genuine situation and declaratory judgment will remove that uncertainty or terminate that dispute." *Bergen Brunswig Drug Co. v. Poulin*, 639 So. 2d 453, 456 (La. Ct. App. 1994). Energy Transfer has met the requirements for maintaining a declaratory judgment action as it is a person interested under the COAA who seeks herein to obtain a declaration of rights, status, or other legal relations thereunder.

65.

Specifically, Defendants' enforceable obligations and duties under the COAA are disputed. Energy Transfer challenges the sham transaction described herein pursuant to the terms of COAA. Granting a declaratory judgment in favor of Energy Transfer will remove uncertainty by clarifying that Defendants possessed no authority to effectuate the sham transaction, effectuate the Plant shutdown, or inflate its voting power under the plain terms and purpose of the COAA.

66.

Energy Transfer is therefore entitled to and requests a declaration that under the plain terms of the COAA:

1. Defendants are precluded from unilaterally maintaining a Temporary Plant Shutdown without complying with the express terms of Article XII and Section 6.2 of the COAA;

2. Defendants are precluded from taking any action meant to circumvent the voting policies established under Article XII of the COAA;

3. Defendants are precluded from taking any action that defeats the express purpose of the COAA's voting procedures enumerated under Article XII of the COAA;

4. any transfer of ownership interests in the Plant to an entity who, in violation of Section 4.4(c) of the COAA, does not commit Gas for processing is void and without legal effect; and

5. any decision on a matter requiring a vote is void and without legal effect if the action was approved by or with the vote of an entity that has not committed Gas to the Plant in violation of Section 4.4(c) of the COAA.

67.

As the requirements for a Temporary Restraining Order have otherwise been met, as further described below, it is appropriate for this Court to preserve the status quo while the rights, status,

or other legal relations thereunder are determined.   The "status quo" means "the last, actual, peaceable, uncontested condition which preceded the pending controversy. . . ."   *Vicksburg, S. & P. Ry. Co. v. Webster Sand, Gravel & Constr. Co.*, 62 So. 140, 144 (La. 1913).   Accordingly, the status quo in this instance is the ongoing operations of the Plant.

68.

### **Request for Temporary Restraining Order & Injunctive Relief**
(Plaintiffs Against All Defendants)

Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

69.

A temporary restraining order and thereafter, preliminary injunction, must issue where, as here, "irreparable injury, loss, or damage may otherwise result."   La. Code Civ. Proc. arts. 3601, *et seq.*   Injunctive relief is proper upon a party's showing: (1) that the injury, loss, or damage it will suffer if the injunction is not issued may be irreparable; (2) that it is entitled to the relief sought; and (3) that it will likely prevail on the merits of the case.   *Limousine Livery*, 2007-1379, at p. 5; 980 So. 2d at 783.

70.

Plaintiffs have no adequate remedy at law for Defendants' actions.   Energy Transfer faces irreparable injury as a result of the loss of its voting rights under the COAA and the denial of its right to vote its shares under the same.   Further, Plaintiffs have no adequate remedy at law for Defendants' actions because the damages they will suffer as a result of the material breaches of the COAA and SA will undermine their current and prospective relationships, result in the loss of their competitive positions, and damage their reputations and goodwill with customers.   These harms are incapable of exact proof.

71.

It will further subject Sea Robin to potential liability by preventing Plaintiffs from meeting their obligations and commitments to their customers.

72.

Sea Robin further faces additional irreparable harm in the permanent loss of business. The gas producers that transport their gas on the Sea Robin Pipeline depend on ongoing Plant

operations in order to maintain production at their wells.    The cessation of Plant operations will likely result in the cessation of production at the relevant wells.    Accordingly, Sea Robin faces complete and permanent losses of business and customers in the event of a Plant shutdown.    Such a loss of business and customer will further serve to damage Sea Robin's reputation and goodwill with customers.

73.

Finally, Sea Robin faces additional irreparable harm because cessation of operations will subject Sea Robin to potential liability because it has a federally imposed duty under the National Gas Act, 15 U.S.C. §§ 717 *et seq.*, to provide open and nondiscriminatory access to Plaintiff's pipelines.    Defendants' actions threaten to force Sea Robin to violate its duty because it will no longer be able to provide pipeline access to its customers.

74.

Unless Defendants are restrained preliminarily and permanently, they will continue to violate Plaintiffs' rights and ignore the express and implied contractual duties owed to Plaintiffs under the COAA and SA.

75.

Accordingly, an Order of this Court requiring a temporary restraining order, and a preliminary and then permanent injunction restraining Defendants from continuing their actions, directly or indirectly, is necessary if Plaintiffs are to obtain meaningful relief.

76.

Providing notice of a Temporary Restraining Order is not required as it would be redundant and futile.    Plaintiffs, the Plant Owners, and their customers have made repeated attempts to negotiate with Defendants, but Defendants have made their unwillingness to remedy this dispute unmistakably clear.    Any delay in enjoining Defendants' unlawful conduct will result in further irreparable injury to Plaintiffs.

Nonetheless, Plaintiffs have taken concerted efforts to provide Defendants with notice of Plaintiffs' request for Temporary Restraining Order, including, *inter alia*, attempting to provide Plaintiffs with copies of this Verified Petition and its exhibits.

77.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Energy Transfer GC NGLs LLC and Sea Robin Pipeline Company, LLC, respectfully request:

(1)    that a Temporary Restraining Order be entered to be effective until further Order of this Court, enjoining Defendants and anyone acting in concert with it from directly or indirectly, whether acting as a partner, member, manager, shareholder, officer, director, employee, contractor, or otherwise from:

- maintaining a Temporary Plant Shutdown as defined by Section 6.8 of the COAA;

- from taking any action meant to circumvent the meeting and voting policies established under Article XII of the COAA

- from taking any action meant to defeat the express purpose of Article XII of the COAA.

(2)    that Plaintiffs Energy Transfer GC NGLs LLC and Sea Robin Company, LLC be given such other equitable and legal relief as is just and proper under the circumstances.

Respectfully submitted,

BY: _____

JAMES K. ORDENEAUX (La. Bar #28179)
SCOTT H. MASON (La. Bar #29329)
MATTHEW T. HABIG (La. Bar #37707)
701 Poydras Street, Suite 3800
New Orleans, Louisiana 70139
Tel: (504) 582-1142
Fax: (504) 582-1172
Email:   jordeneaux@pmpllp.com
Email:   smason@pmpllp.com
Email:   mhabig@pmpllp.com
Counsel for Energy Transfer GC NGLs LLC

**PLEASE SERVE**
Enterprise Gas Processing, LLC
Through CT Corporation
3867 Plaza Tower Dr, Baton Rouge, LA 70816

Enterprise Products Operating LLC
Through CT Corporation
3867 Plaza Tower Dr, Baton Rouge, LA 70816

Enterprise Field Services, LLC
Through CT Corporation
3867 Plaza Tower Dr, Baton Rouge, LA 70816

Enterprise Field Services (Offshore) LLC
Via Long Arm Service
1100 Louisiana Street, Suite 2400
Houston, TX 77002

15th JUDICIAL DISTRICT COURT FOR THE PARISH OF VERMILLION

STATE OF LOUISIANA

DOCKET NO.                                                    DIVISION: " "

ENERGY TRANSFER GC NGLS LLC (FORMERLY, LONE STAR NGL LLC
(ENERGY TRANSFER)); SEA ROBIN PIPELINE COMPANY, LLC

VERSUS

ENTERPRISE GAS PROCESSING, LLC;
ENTERPRISE PRODUCTS OPERATING LLC;
ENTERPRISE FIELD SERVICES, LLC;
ENTERPRISE FIELD SERVICES (OFFSHORE) LLC

FILED:_____          _____
                                              DEPUTY CLERK

### CERTIFICATION OF NOTICE

I, James Ordeneaux, hereby certify that notice of the filing of this VERIFIED PETITION FOR DAMAGES AND INJUNCTIVE RELIEF AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and accompanying attachments and exhibits has been provided to the defendants in accordance with the notice provisions of the Restated and Amended Agreement for the Construction and Operation of the Sea Robin Gas Processing Plant on this 4th day of November, 2024.

                              _____
                              JAMES K. ORDENEAUX